**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 18-413 (KSH) |
| v. | |
| KENNETH JACKSON,<br>            *Defendant*. | **OPINION** |

### I.     Background

Kenneth Jackson has petitioned the Court for compassionate release (D.E. 51, 53), which the government opposes. On March 27, 2019, Jackson pleaded guilty to a one-count indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 60 months' imprisonment, followed by three years of supervised release, with special conditions requiring alcohol and drug testing and treatment. (D.E. 46.) Jackson self-surrendered to FCI Schuylkill on or about September 15, 2019, and is scheduled for release on June 29, 2021. (D.E. 46, 56.) According to his submissions, he will be transferred to a halfway house on January 5, 2021.

On May 12, 2020, Jackson filed a letter, which the Court will construe as a motion, seeking a reduction in sentence and/or release to home confinement based on the COVID-19 pandemic and his asserted medical conditions; *i.e.*, chronic obstructive pulmonary disease (COPD), mild emphysema, high blood pressure, and high cholesterol. (D.E. 51.) He filed a supplemental letter on June 2, 2020, reiterating his fear of contracting COVID-19 in view of his medical conditions and the conditions of his confinement. (D.E. 53.) The Office of the Federal Public Defender declined to provide representation (D.E. 54), and the government filed its

1

opposition on July 8, 2020.  (D.E. 56.)   The government supplemented its opposition on July 21, 2020, providing Jackson's medical records at the direction of the Court. (D.E. 58.)

In opposing Jackson's request, the government argues that his medical records do not substantiate his claimed medical conditions, and that the conditions at FCI Schuylkill do not present Jackson with an increased risk of contracting COVID-19.  (D.E. 56.)  In the supplemental filing, the government noted that in the Presentence Report prepared in connection with his sentencing, which is dated June 14, 2019, Jackson reported he was in good health and was not prescribed any medications.  (D.E. 58, at 2.)  The government further argues that consideration of the sentencing factors under 18 U.S.C. § 3553(a) does not support compassionate release in this case.  Finally, the government contends that to the extent Jackson is requesting release to home confinement, the Court has no authority to grant that relief.

**II.     Legal Standard**

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances.  *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)).  Relevant here, 18 U.S.C. § 3582(c)(1) provides as follows:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission's policy statement permits a court to reduce a term of imprisonment under § 3582(c)(1)(A) where extraordinary and compelling reasons warrant the reduction, the defendant is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and release would comport with consideration of the § 3553(a) factors. U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018); *see also United States v. Moore*, 2020 U.S. Dist. LEXIS 132220, at *4 (D.N.J. July 27, 2020) (McNulty, J.); *United States v. Cantatore*, 2020 U.S. Dist. LEXIS 89949, at *4 (D.N.J. May 21, 2020) (Salas, J.).

### III.   Discussion

#### A.   Administrative Exhaustion

As the Third Circuit recently explained, "[a] prisoner may file a motion for compassionate release with the sentencing court 'after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020).

The government concedes, and the Court concludes, that Jackson has exhausted his administrative remedies. The record shows that Jackson applied to the warden of FCI Schuylkill on April 1, 2020, seeking compassionate release under § 3582, citing, among other things, COPD and mild emphysema. (D.E. 58-2.) Jackson's motion was filed more than 30 days later, and, in any event, the warden denied Jackson's request on April 16, 2020. (*Id.*) Accordingly, the substance of Jackson's motion for compassionate release is properly before the Court.

#### B.   Compassionate Release

##### 1.   Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to define the meaning of the statutory term

"extraordinary and compelling reasons." *United States v. Alexander*, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (Wolfson, J.) (citing 28 U.S.C. § 994(t)). The application notes to the Sentencing Commission's relevant policy statement state that extraordinary circumstances exist in specified circumstances involving the defendant's medical condition, age, or family circumstances. USSG § 1B1.13, Application Note 1(A)-(C).[1] Here, Jackson has invoked medical conditions as the basis for his request. A medical condition may give rise to extraordinary and compelling reasons where the defendant is:

    (I)     suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, Application Note 1(A)(ii). Although this policy statement has not been updated since the passage of the First Step Act and, as such, addresses compassionate release motions brought by the BOP rather than by the defendant personally, it remains "helpful guidance" in determining a defendant's eligibility for such relief while not constraining the Court's "independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)." *Alexander*, 2020 U.S. Dist. LEXIS 85609, at *6-7 (quoting *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 58718, at *9-10 (E.D. Pa. Apr. 1, 2020) (internal quotation marks omitted)).

---

[1] The application notes also contain a catchall provision. *See id.* at Application Note 1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

Practically speaking, applying the policy statement's language about extraordinary and compelling reasons involves, in this context, assessing the record evidence of Jackson's medical conditions and the likelihood he will contract COVID-19 in the institution in which he is incarcerated. *See Moore*, 2020 U.S. Dist. LEXIS 132220, at *7. Jackson contends that he has been diagnosed with COPD, mild emphysema, high blood pressure, and high cholesterol (D.E. 51, 53), and that he is in "care level 1 health status" for his high blood pressure (D.E. 53, at 1.) He further contends that his medical diagnoses, as well as the confined conditions at FCI Schuylkill, make him more susceptible to the virus.

The medical records supplied to the Court do not reflect any diagnosis of COPD or emphysema or any treatment or symptoms that would potentially reflect a prior diagnosis. The records are equivocal as to the degree to which Jackson suffers from hypertension; while they reflect higher than normal blood pressure readings,[2] they also describe Jackson's blood pressure as "well-controlled" (D.E. 58-1, at 70.) Even assuming Jackson does have hypertension, however, the Centers for Disease Control observes that this condition "might" present an increased risk of severe illness from the virus, as distinguished from those medical conditions establishing that inmates "are" at increased risk of serious illness from the virus. *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated Oct. 6, 2020) (last visited October 13, 2020). Additionally, the records show that the BOP has afforded Jackson regular care and that Jackson has undertaken exercise and diet changes to control his blood pressure. High cholesterol, the other condition Jackson invokes, is not on either list supplied by

---

[2] Individuals with normal blood pressure have systolic blood pressure below 120 mm Hg and diastolic blood pressure below 80 mm Hg. CDC, High *Blood Pressure Symptoms and Causes*, https://www.cdc.gov/bloodpressure/about.htm (page last reviewed May 19, 2020) (last visited October 8, 2020).

the CDC.³  Additionally, Jackson's case manager reported on July 1, 2020, to the government that Jackson "has no chronic medical conditions nor recurring sick call complaints."  (D.E. 58-2, at 2.)

The condition whose existence the present record most supports, hypertension, describes a condition that "might" present Jackson with an increased risk of severe illness as opposed to one that does.  As such, the Court cannot conclude on medical comorbidity alone that Jackson suffers from a "serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care" in a correctional facility and from which he is not expected to recover.  *See* USSG § 1B1.13, Application Note 1(A)(ii).

But on this record, medical conditions are not the end of the analysis.  Jackson cites the conditions at FCI Schuylkill as an environment in which COVID-19 would thrive due to the confined conditions and the high volume of contact between officers and staff, the latter of whom could bring the virus into the facility. On this point, the Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  To the extent Jackson contends that "at least one unit . . . is in quarantine" (D.E. 53, at 3),⁴ the government responds, relying on a July 1, 2020 email from the Executive Assistant/Camp Administrator at FCI Schuylkill, that there had been one positive COVID-19 case at the facility, and that it originated from an inmate who tested positive upon reporting, was isolated, and did not have contact with other inmates (D.E. 56, at 2-3; D.E. 58-3).

---

³       The medical records submitted to the Court reflect lab results indicating high cholesterol, but no specific diagnosis of that condition or treatment for it.

⁴       Jackson also laments the lack of programming and privileges such as visits while the facility operates in essentially lock-down conditions.  However unfortunate, those circumstances are not the focus of the inquiry the Court must make under the statute and the Sentencing Commission's policy statement.

As of the date of this writing, FCI Schuylkill reports that one inmate has recovered from the virus, and that there is one active staff case. BOP, COVID-19 Coronavirus, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited October 13, 2020).

Left unaddressed by the government is Jackson's reference in his papers before the BOP and this Court to a release plan approved by U.S. Probation. Such information could advise the Court whether or not release measurably improves Jackson's medical safety, as well as addressing the issue of dangerousness. Equally unexamined are the safety conditions at the unidentified halfway house where it appears Jackson will be designated in early January 2020 to serve the remainder of his custodial term. And the medical records, which the government failed to file under seal on the docket, only cover the period of time between Jackson's self-surrender to FCI Schuylkill in mid-September 2019 and June 2, 2020. This leaves the Court with an equivocal record upon which to determine whether Jackson's hypertension coupled with the conditions at his place of confinement put him at significant risk.

**IV.     Conclusion**

The Court directs the government to file under seal on the docket Jackson's medical records after June 2, 2020; provide an updated report on safety and reported cases at FCI Schuylkill; and identify the halfway house where he will be transferred in January 2021 and its safety record and protocol.

Dated:  October 13, 2020                                      /s/ Katharine S. Hayden
                                                                              Katharine S. Hayden, U.S.D.J.