<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 18-413 (KSH) |
| v. | |
| KENNETH JACKSON, *Defendant*. | <u>**OPINION**</u> |

### I.     Background

Following his guilty plea to a one-count indictment charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), defendant Kenneth Jackson was sentenced to 60 months' imprisonment, followed by three years of supervised release.  He is scheduled for release on June 29, 2021, and is set to be transferred to a halfway house on January 5, 2021.  In the application presently before the Court (D.E. 51, 53), Jackson has sought a reduction in sentence and/or release to home confinement on compassionate release grounds due to the COVID-19 pandemic and various asserted medical conditions.  The government has opposed his request.

On October 13, 2020, the Court determined that while Jackson had satisfied the administrative exhaustion requirement and his request for relief was therefore properly before the Court, the record did not appear to support a finding of extraordinary and compelling circumstances based on a medical condition.  However, the Court could not conclusively determine that the requested relief was unavailable because the record was incomplete, and directed the government to file Jackson's updated medical records, provide an updated report on safety and reported cases at FCI Schuylkill, the institute in which Jackson is confined, and identify the

halfway house to which he would be transferred in January 2021 and its safety record and protocol. (D.E. 61, 62.)  The government filed its supplemental submission on October 20, 2020.  (D.E. 63.)

## II.    Legal Standard

As explained in the Court's prior opinion, the Court may modify a term of imprisonment only under limited circumstances.  *In re Morris*, 345 F. App'x 796, 797-98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)).   Under 18 U.S.C. § 3582(c)(1), the Court may reduce a term of imprisonment, after considering the sentencing factors in 18 U.S.C. § 3553(a) to the extent applicable, if it finds that extraordinary and compelling reasons warrant the reduction and the relief is consistent with applicable policy statements issued by the United States Sentencing Commission.

The applicable Sentencing Commission policy statement, in turn, permits a court to reduce a term of imprisonment under § 3582(c)(1)(A) where extraordinary and compelling reasons warrant the reduction, the defendant is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and release would comport with consideration of the § 3553(a) factors.  U.S. Sent'g Guidelines Manual ("USSG") § 1B1.13 (U.S. Sent'g Comm'n 2018); *see also United States v. Moore*, 2020 U.S. Dist. LEXIS 132220, at *4 (D.N.J. July 27, 2020) (McNulty, J.); *United States v. Cantatore*, 2020 U.S. Dist. LEXIS 89949, at *4 (D.N.J. May 21, 2020) (Salas, J.).

## III.    Discussion

Resolution of Jackson's application turns on whether he has shown an "extraordinary and compelling reason" warranting a reduction in his sentence; absent the existence of such reason, it is unnecessary to assess the sentencing factors under 18 U.S.C. § 3553(a) or the issue of dangerousness under 18 U.S.C. § 3142(g).  When, as here, a medical condition is the basis for a claim that extraordinary and compelling reasons exist, the defendant must be:

2

(I)        suffering from a serious physical or medical condition,

(II)       suffering from a serious functional or cognitive impairment, or

(III)      experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, Application Note 1(A)(ii).  *See also United States v. Alexander*, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (Wolfson, J.) (policy statement offers "helpful guidance" in determining eligibility for compassionate release).  To evaluate whether this language is implicated, the Court must assess the evidence before it as to Jackson's medical conditions and the likelihood he will contract COVID-19 at FCI Schuylkill.  *See Moore*, 2020 U.S. Dist. LEXIS 132220, at *7.

Jackson contends that he has been diagnosed with COPD, mild emphysema, high blood pressure, and high cholesterol (D.E. 51, 53), that he is in "care level 1 health status" for his high blood pressure (D.E. 53, at 1), and that these diagnoses, as well as the confined conditions at FCI Schuylkill, make him more susceptible to the virus.  The Court previously observed that the medical records before it did not reflect a diagnosis of COPD or emphysema or anything indicating a prior diagnosis with those conditions.  And although the medical records included lab results indicating high cholesterol, they do not reflect any diagnosis of that condition or treatment for it.[1]  The updated records do not change these earlier observations.

Similarly, the updated records do not alter the Court's conclusion that Jackson's asserted hypertension does not rise to the level of a medical condition constituting an extraordinary and

---

[1] Moreover, high cholesterol is not on the list of conditions that the Centers for Disease Control describes as posing an increased risk of severe illness from COVID-19. CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated Oct. 16, 2020) (last visited October 30, 2020).

compelling circumstance.  As the Court previously noted, the records show that the BOP has

afforded Jackson regular care and that Jackson has opted for exercise and diet changes to control

his blood pressure.  The updated records, which include Jackson's August 17, 2020 medical

check, note the absence of "abnormal findings" and include the notation "Bp within normal

parameters."  (D.E. 63-3, at 3.)  Additionally, Jackson's case manager reported on July 1, 2020,

to the government that Jackson "has no chronic medical conditions nor recurring sick call

complaints."  (D.E. 58-2, at 2.)  And even assuming Jackson does have hypertension, the Centers

for Disease Control recognize that condition only as one that "might " present an increased risk

of severe illness from the virus, as distinguished from those medical conditions establishing that

persons "are" at increased risk of serious illness from the virus.  *See* CDC, People with Certain

Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html (page last updated Oct. 16, 2020) (last visited

October 30, 2020).  The Court cannot conclude that Jackson has a "serious physical or medical

condition . . . that substantially diminishes [his] ability . . . to provide self-care" in a correctional

facility and from which he is not expected to recover.  *See* USSG § 1B1.13, Application Note

1(A)(ii).

     As to the conditions at FCI Schuylkill, in which Jackson contends COVID-19 would

thrive, the Third Circuit has held that "the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify

compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  This record

indicates that one inmate at FCI Schuylkill tested positive in June 2020 and has since recovered.

According to the Executive Assistant/Camp Administrator at FCI Schuylkill, that inmate tested

positive upon reporting, was isolated, and did not have contact with other inmates. Only after a

period of medical isolation, then quarantine, and a negative COVID-19 test, was the inmate

released to the general population.  (D.E. 56, at 2-3; D.E. 58-3, D.E. 63-1).  As of the date of this writing, FCI Schuylkill reports that one inmate has recovered from the virus and there are two active staff cases and one recovered staff member. BOP, COVID-19 Coronavirus, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited October 30, 2020).  The Executive Assistant/Camp Administrator reported to the government that as of October 6, 2020, 950 tests had been administered. These figures, and the institution's response to the single inmate case months ago, do not compel a finding of extraordinary and compelling reasons for a reduction in sentence. Kintock, the halfway house to which Jackson is scheduled to be released in early January 2021, appears to offer similar conditions: the government states that the facility's administrator has represented that there have been no COVID-19 cases in the building in which Jackson will be assigned, and protocols are in place to minimize the risk of the virus spreading among the halfway house residents.  (*See* D.E. 63, at 2; D.E. 63-2.)

Under the circumstances, the Court cannot find that an extraordinary and compelling reason for reduction in Jackson's term of imprisonment has been shown.  Accordingly, the Court need not reach whether the sentencing factors under 18 U.S.C. § 3553(a) favor that relief or the issue of dangerousness under 18 U.S.C. § 3142(g).

**IV.       Conclusion**

Jackson's application (D.E. 51, 53) is denied. An appropriate order will issue.


Dated:  October 30, 2020                          /s/ Katharine S. Hayden
                                                  Katharine S. Hayden, U.S.D.J.